# R. Freedman v. Fire Association of Philadelphia, Appellant.

*Insurance—Fire insurance—Misrepresentation by insured.*

No recovery can be had upon a policy of fire insurance procured upon the representation that the property insured was owned by and in charge of a successful business man, when in fact the title was in a married woman who exercised no supervision over it.

*Insurance—Misrepresentations—Waiver.*

Waiver is essentially a matter of intention, and cannot arise out of acts done in ignorance of material facts, and its proof is inadequate unless it is shown that the insurer knew of the right of forfeiture at the time of doing the act.

A stock of merchandise was insured in the name of R. Freedman.  The insurance was procured by the representation of the owner's agent that R. Freedman was a successful business man.  It was owned by Rosa Freedman, a married woman, and was in charge of her brother-in-law.  The property was destroyed by fire.  The third day after the fire plaintiff's husband and the agent of the insurance company met by appointment, the agent supposing that he was meeting R. Freedman, the insured.  Bills were produced to " Mr. R. Freedman " for goods claimed to have been burnt, and after some examination with a view to ascertain the amount of the loss the parties separated.  Proofs of loss in which the pronoun

" her" appeared were made out and mailed to the company's office, without any request or suggestion from the officers of the company.  Subsequently the special agent of the company wrote a letter to plaintiff addressing her as "madam," calling her attention to the fact that a certificate of the nearest magistrate had not been attached to the proof of loss. The letter contained a distinct statement that liability was neither admitted nor denied.  *Held*, that the evidence as to a waiver was insufficient, and that the trial judge should have directed a verdict for the defendant.

Argued March 19, 1895.    Appeal, No. 197, July T., 1895, by defendant, from judgment of C. P. Bradford Co., Sept. T., 1892, No. 631, on verdict for plaintiff.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ.    Reversed.

Assumpsit on a policy of fire insurance.    Before PECK, P. J.

In addition to the facts stated in the opinion of the Supreme Court, the following letter was admitted in evidence:

"WILLIAMSPORT, Pa., May 28, 1892.
"R. FREEDMAN, Athens, Pa.

"Madam:—We are in receipt of papers purporting to be proofs of loss under policy No. 1,322,576, Tunkhannock, Pa., agency.    By reference to your policy you will learn that it is necessary to have the magistrate residing nearest to where the fire occurred furnish a certificate if required by the Association.    We now ask you to furnish such certificate, according to the terms and conditions of said policy.    Neither admitting nor denying liability under said policy, and holding subject to your orders the papers first above referred to, we remain,

"Yours truly,

"BEN. F. WALKER,

"Special Agent of the Fire Association of Philadelphia."

The court charged in part as follows:

" [If the defendant by the conduct of its agent has caused the plaintiff labor, expense and loss which she would not have otherwise incurred had she been notified that the company intended to claim that the policy was void on the ground of misrepresentations, I am of the opinion that the company would be estopped from setting up that the policy was void.    When the defendant learned the truth about this policy, that the plaintiff was a married woman, and if they had been deceived as claimed

by the evidence of Mr. Eastman, they could have adopted two courses: First, they could elect to declare the policy void and notify the plaintiff of that fact; or, second, they could affirm this policy and then adjust the loss, if any, which the plaintiff had sustained. Or, I think, that they might have relied upon both: that the policy was void, and also contest the amount of the loss. But I am of the opinion that if they took the latter course they should notify the plaintiff of their real defense. Because, if this policy is void, that is one thing. If it was in force and required proofs of loss, that would be inconsistent with declaring the policy void, and if they notified this plaintiff that she must produce proofs of loss, after they had knowledge of the true state of affairs, and required her to go to expense in getting copies of bills, making proofs of loss, getting certificates from the nearest magistrate, or any other expenses which she would not have done had they made known to her their real cause of defense, then we think they would be estopped.] " [1]

Verdict and judgment for plaintiff for $2,195. Defendant appealed.

*Error assigned* among others was (1) above instruction, quoting it.

*I. McPherson, E. Overton* and *E. J. Angle* with him, for appellant.—The applicant for insurance should exercise good faith, and in giving information required, like a witness on a stand, should always speak the truth; Smith v. Ins. Co., 17 Pa. 253; Diffenbaugh v. Union Fire Ins. Co., 150 Pa. 274; 1 Biddle on Ins. sec. 578; Zimmerman v. Farmers' Ins. Co., 76 Iowa, 352; Mead v. Ins. Co., 64 N. Y. 453; Smith v. Ins. Co., 17 Pa. 253.

The court erred in instructing the jury that they might find that the defendant had waived the defense based on the representations, or estopped itself from setting it up, and that they might return a verdict in favor of the plaintiff under the evidence in the case. There is not a particle of proof that the plaintiff was in any way misled by the defendant, or that she was induced to do anything which she would not otherwise have done by any acts or declarations of the defendant: National Ins. Co. v. Brown, 128 Pa. 386; Gould v. Ins. Co., 134

Pa. 570; McFarland v. Kittaning Ins. Co., 134 Pa. 590; Welsh v. London Assurance Corp., 151 Pa. 607; Nat. Ins. Co. v. Brown, 128 Pa. 386; McCormick & Son v. Royal Ins. Co., 163 Pa. 184; Niagara Fire Ins. Co. v. Miller, 120 Pa. 516.

The relation of insured and insurer never existed between the parties in this case. The doctrine applicable to such relation should not be applied.

*H. F. Maynard, I. N. Evans* and *Wm. Maxwell* with him, for appellee.—There was sufficient evidence to go to the jury on the question of estoppel: Western & A. Pipe Lines v. Home Ins. Co., 145 Pa. 346; 2 Wood on Fire Ins. p. 1161; McCormick & Son v. Royal Ins. Co., 163 Pa. 184; Welsh v. London Assurance Corp., 151 Pa. 607; Leb. M. F. Ins. Co. v. Erb, 112 Pa. 572; Bonnert v. Penna. Ins. Co., 129 Pa. 558; Niagara Fire Ins. Co. v. Miller, 120 Pa. 504.

The jury must find as a matter of fact that the representations were material, and in fact influenced the insurer in taking the risk at a lower rate of premium than he would have taken it for, if the real state of risk had been known : Wood on Fire Ins. p. 459, sec. 192.

OPINION BY MR. JUSTICE FELL, May 20, 1895 :

The policy of insurance upon which suit was brought was upon a stock of general merchandise in a country store. It was insured as the property of R. Freedman. It was owned by Rosa Freedman, a married woman, and was in charge of her brother-in-law, Louis Freedman, who conducted the business at the store. She resided with her husband some fifty miles distant from the place where the business was carried on, and gave it no supervision whatever. The evidence at the trial was uncontradicted that the insurance had been procured by her agent on the representation made to the agent of the insurance company that " R. Freedman was a successful business man," and that the policy was issued under the belief based upon representations made that the company was insuring a stock of goods owned by a business man who was personally conducting the business, and that the risk would not have been accepted had the truth been known. It was also undisputed that the agents of the company had no knowledge that the representations were incorrect until after the loss.

The jury was instructed that if the defendant accepted the risk because of these representations, and would not otherwise have done so, the policy was void because of the fraud practiced. It was clearly an imposition upon the company to procure a policy upon the representation that the property insured was owned by and in charge of a successful business man, when in fact the title was in a married woman who exercised no supervision over it. The actual business risk because of the want of personal supervision by the owner, and the moral risk, were both greater. Whether greater or less, they were different. It was important to the company to know whose property it was insuring, in whose charge it was, and every fact which affected the risk; and any fraud or imposition in these matters went directly to the foundation of the contract. The charge of the learned judge clearly stated the law on the point involved, and the only question now to be considered is whether there was sufficient evidence upon which to submit to the jury the question of a waiver of forfeiture, after knowledge, by the defendant.

Our cases have gone very far in holding acts of the insurer consistent with or evincing a recognition of liability as sufficient ground for the inference of a waiver of the right of forfeiture. The difficulty has been to give fair effect to the stipulations guarding against fraud without defeating the general purpose of the contract as one of indemnity. A waiver in this case could grow only out of a necessary inconsistency between courses of action adopted at different times by the insurer, upon the faith of one of which the insured has acted or refrained from acting. Waiver is essentially a matter of intention, and cannot arise out of acts done in ignorance of material facts, and its proof is inadequate unless it is shown that the insurer knew of the right of forfeiture at the time of doing the act. We find nothing in the testimony in this case which will sustain a finding that the defendant had waived its right to declare the policy void because of the fraud practiced at the time it was procured, or which justifies the submission of the question to the jury.

The third day after the fire the plaintiff's husband and the agent of the insurance company met by appointment. The agent supposed he was meeting R. Freedman, the insured.

Bills were produced made to " Mr. R. Feedman " for goods claimed to have been burnt, and after some examination with a view to ascertain the amount of the loss the parties separated. Proofs of loss were made out and mailed to the company's office without any request or suggestion from the officers of the company. The parties were standing upon their rights and dealing at arms' length. The insurance had been procured upon the representation that the insured was a business man. In accepting the risk, in issuing the policy, as shown by the pronoun used, in sending a bill for the premium to " Mr. R. Freedman," and in all its dealing up to this time it is clear that the company's agents supposed the insured to be a business man.

It is not pretended that they had any knowledge to the contrary until after the fire, and the only evidence of knowledge in the case is based upon the fact that the special agent after the receipt of the proof of loss wrote a letter to the insured in which she was addressed as " madam." The letter was written under these circumstances : The policy required that a certificate of the nearest magistrate should be attached to the proof of loss, and the proofs furnished were defective in that particular. The special agent of the company wrote to the plaintiff calling her attention to the omission and requesting that the certificate be furnished. In the affidavit which she had previously sent the pronoun " her " was used, and his letter was addressed to " R. Freedman, Athens, Pa.—Madam." This is the only evidence in the case of knowledge by any one acting for the insurance company that the policy had been issued to a woman, and it is the only fact upon which a waiver can be based. Under our cases this would be evidence of a waiver of any defect in the proofs of loss other than the one mentioned, and it might raise the question of the right to defend for the breach of other conditions or for the failure of the plaintiff to take any steps that were merely formal prerequisites to a suit. The trend of our decisions has been to hold insurance companies to good faith and frankness in not concealing the ground of defense and thus misleading the insured to his disadvantage. They may remain silent except when it is their duty to speak and the failure to do so would operate as an estoppel ; but having specified a ground of defense, very

slight evidence has been held sufficient to establish a waiver as to other grounds. The most recent case, and one in which the subject is fully considered by the present Chief Justice, is Mc-Cormick v. Royal Ins. Co., 163 Pa. 184. In Gould v. Dwelling House Ins. Co., 134 Pa. 570, the cases are classified and the distinction in them between an attempted compliance with the requirements of a policy within the stipulated time and a failure without valid excuse is pointed out by MITCHELL, J.

The question here was the right of the defendant to insist upon a forfeiture of the policy for the reason that it was obtained by fraud. There could be no waiver of this right unless such was the intention, and no act would be evidence of a waiver unless done with knowledge of the imposition. The only evidence of intention or knowledge in this case is the letter referred to. It contains a distinct statement that liability under the policy is neither admitted nor denied; and while it may be evidence that the company had knowledge at that time that the insured was a woman, it indicates no intention to waive any ground of defense. The invalidity of the policy being established, the burden of proof was on the plaintiff to show that with knowledge of the facts upon which it could be avoided the defendant did that which would make it inequitable to enforce the forfeiture.

The charge in this case is a very clear and fair presentation of the issues involved, but we regard the testimony as to a waiver insufficient to sustain a finding for the plaintiff. The learned judge should have gone a step further and directed a verdict for the defendant. The assignments of error touching this question are sustained, and the judgment is reversed.