# J. H. Davidson *v.* Guardian Assurance Company of London, Appellant.

*Insurance—Fire insurance—Mistake—Question for jury.*

In an action upon a policy of fire insurance the defendant company claimed that the policy was only for one year and that the premium had only been paid for one year, and that the words " for the term of three years " had been written by the agent in mistake, and that plaintiff knew that it was a mistake.  The plaintiff testified that the policy was in the same condition as when he received it, and that he had accepted it in good faith and relied upon it as a policy running for three years, and did not know that there was any question about its being a three years' policy. *Held*, that the question of the validity of the contract for three years was for the jury.

*Insurance—Fire insurance—Waivers of proofs of loss—Evidence.*

In an action upon a policy of fire insurance it appeared that on the day of the fire plaintiff wrote to the agent from whom he obtained the insurance, and five days afterwards to the general manager of the insurance company, informing him of the loss.  On the day after the fire the agent saw the plaintiff and arranged a meeting between the plaintiff and the adjuster.  The adjuster found that the loss had been a total one, and in excess of the amount of the insurance.  He assured the plaintiff that the latter had done everything that was necessary, and that the loss would be paid, and said that he would send to plaintiff the proofs of loss ready for his signature.  Two weeks afterwards, plaintiff, not having received the proofs of loss, wrote to the agent who replied, denying the liability of the company on one policy, admitting it on the other, and requesting plaintiff to correspond with the New York office.  In reply to a letter addressed by the plaintiff to the New York office the manager wrote that he assumed that the correspondence referred to the policy on which the liability was admitted, and " on that assumption we beg to refer you to the printed terms and conditions of said policy, which give full instructions as to the mode of proceeding in the event of loss."  The plaintiff at once replied, saying that the letter he had received was very unsatisfactory, that his claim was on both policies, and asking for a more specific statement of the position of the company as to the responsibility for the mistake in writing the policy.  With this the correspondence ended.  *Held*, that there was sufficient evidence of a waiver of proofs of loss to sustain a judgment and verdict in favor of plaintiff.

Argued May 11, 1896.  Appeal, No. 165, Jan. T., 1896, by defendant, from judgment of C. P. Fayette Co., Dec. T., 1893, No. 353, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.  Affirmed.

Assumpsit on a policy of fire insurance. Before EWING, J.

The facts appear by the opinion of the Supreme Court, and by the charge of the court below, which was as follows :

This is an action brought by Dr. J. H. Davidson against the Guardian Insurance Company for the purpose of recovering the amount of insurance taken out in that company by him, and represented by the two policies which have been given in evidence before you. The amount specified in each is $1,250.

It seems that Dr. Davidson had some property in Perryopolis in this county—a large building there, partly frame and partly brick—upon which this insurance was placed, and from 1889 up until and including the year 1892 had taken that insurance from an agent at West Newton, Mr. Shaner, who has testified before you here. One of the policies was taken out and is dated in July, 1891, and the term covered thereby runs from noon of the 1st day of August of that year until noon of the 1st day of August, 1894. The other policy was taken out in July or August of 1892, and runs for a period of one year.

In March, 1893, it seems that this property was destroyed by fire on the 28th day. It has been stated here by the witnesses that it was valued at from $5,000 to $6,000, even by the adjuster of the defendant company, sent there to see about this loss, while the total amount of insurance covered by both policies was but $2,500, and the property was a complete loss. That is, there was no salvage ; everything in and about the property and embraced within the insurance was totally destroyed.

Immediately after the fire, it is undisputed that Dr. Davidson wrote both of the agents through whom he obtained the insurance, and also to the company issuing the insurance, and that the day following the fire, the agent, Mr. Shaner, visited him there, made some inspection of the premises, had some conversation about the fire—about the amount of the loss and the amount of insurance—and went away, and subsequently made an arrangement, of which he notified Dr. Davidson, to have an adjuster of the company to come out and adjust the loss. The adjuster of the company notified Dr. Davidson what day he would be there, and met him and went over the premises ; and it has not been disputed in the testimony here that the property was totally destroyed, nor has there been any testimony offered

here to show that the value of that property was not greater than the total amount of insurance claimed in this case.

[Now as to proof of loss : These policies of insurance, as well as perhaps all policies of similar insurance, provide that the insured, in case the property insured is destroyed in any of the manners provided for in the policy, shall make out what is called a "Proof of Loss," in conformity with the requirements of the company, and send it to the company within a specified time. This, it is claimed by the plaintiff in this case, was waived by the defendant company, when its officers, the agent and adjuster were present there and saw the condition of affairs, and consequently, it being, admittedly, a total loss, no proof of loss under that clause of the policy was necessary.

In regard to the waiver, it seems that the arrangement about that that was made with the adjuster was that he was to prepare the proof of loss and send it to Mr. Davidson for his signature —and possibly his affidavit—as required by the policy, and then to be by him forwarded to the company. But that at the same time he stated that there was no dispute about the matter ; that the loss was total, and that the value of the property, as I have stated, was in excess of the amount of insurance. So that the plaintiff testifies—and the witness who was there at the time the adjuster was present and heard part of the conversation so testifies—that the contract on the part of the adjuster, and his declaration at that time, was to the effect that the company would pay the insurance ; that there was no question about the amount of the loss or anything of that kind.

But further than that, being a case of total loss, our courts have decided in accordance with the decision of the Supreme Court which binds us, that in case of total loss, and no doubt about the amount of the insurance being less than that of the value of the property destroyed, a proof of loss is unnecessary, as being a vain thing, the object of a proof of loss being to advise a company of the extent and value of the property destroyed, in order that if the property destroyed does not amount in value to the amount of the insurance, they will not be required to pay more than the total actual amount of the loss. So that, so far as that question is concerned, we instruct you that there is no difficulty here in regard to that. The act of the agent of the company— authorized officer—for the purpose of making adjustments of

this kind, at the time, and the conduct of the company, as well as the undisputed value of the property being in excess of the amount of the insurance, would warrant a recovery so far as the question of the proof of loss is concerned, if you find that these undisputed facts are facts in the case, and the defense has offered no testimony to disprove them.] [5]

[Now as to the one policy, the testimony, and the letters and declarations of the officers of the company to the effect that no question was raised in regard to that policy being in effect at the time of the loss, and to being in its terms and conditions a policy in force at that time and valid to recover this insurance,— if you find from the testimony that there was a destruction of this property covered by that policy of insurance, to an amount, in value, in excess of the amount of insurance in that policy, and if the property was a total loss so as to obviate the necessity of the furnishing, by the insured, of a proof of loss required by the policy of the company, or if the conduct of the company was such as to waive the proof of loss, then the plaintiff would be entitled to recover the amount of that policy—the one year policy; and really, the serious question and contention in this case is in regard to the other policy—the one, which on its face, covers the term of three years.] [6]

[Now that policy, as I have stated, was issued in July, 1891, and ran from the 1st day of August, 1891, to the 1st day of August, 1894, according to what was written on the face of the policy, and the date specified on its back. The plaintiff here says that that policy was issued to him by the agent of this company, Mr. Shaner, pursuant to a practice that he had of providing him with insurance from time to time as prior insurance would expire, and that he accepted it for what, on its face, it purported to be—a policy of insurance for three years—paying the premium demanded of him when the agent called on him for that purpose, subsequently, on that policy, and didn't know that there was any question about the policy running for the term stated in it; accepted it in good faith as a policy for three years, and acted upon it as such; that prior to the time and up to the time of the death of Mr. Rankin, a prior insurance agent who did business for the defendant in this case, he says that he had carried upon this property an insurance of $2,500; that at the time of the death of Mr. Rankin he received policies, when the policies

then in force expired, from two sources—one from the agent, Mr. Shaner, and the other from another agent named Campbell, and that this, I believe, was in 1889, and for a year or two at least held both policies, each, as I understood him for the same amount—$1,250—on this property. But in the subsequent year he returned the Campbell policy and retained only the Shaner policy for $1,250, and that during the year 1890, and up until 1892 when this one-year policy in suit here was taken out, had but $1,250 insurance on this building. But he says that after the three year policy was issued, and during the first year, he made application to Mr. Shaner for additional insurance on this property—spoke to him, I believe he says once or twice, possibly twice, about it, and told him he wanted him to give him another policy of insurance for the same amount; that after having spoken to him first about it, not receiving it, when he saw him again he spoke to him a second time and reminded him that he hadn't sent it; and that it was not a policy taken out in renewal of this three year policy or any other policy, but as additional insurance upon this property, to create an insurance of $2,500 upon it, and that no question was ever raised to him, and he never heard anything about any difficulty about the policy, until after his loss had occurred. And upon that testimony, going to substantiate, as he alleges, his view of the case, he asks the jury to find that he is entitled to recover the insurance upon that policy as a valid policy in force at the time of the destruction of his property, for the amount specified in the policy.] [7]

Now, on the part of the defendant an entirely different position is taken. They allege, first, that that policy shows upon its face some alteration or erasures, particularly in regard to the year when it would expire, and call attention to the appearance of the figures where 1894 is written upon the face or inside of the policy, and also where the same thing is written on the outside or back of the policy. They don't say that that alteration was made by the plaintiff in this case, and indeed, Mr. Shaner, the agent, doesn't say that he didn't make it if such an alteration was made, but says he has no recollection of it, and doesn't know how it came there, or the circumstances under which it may have gotten in that condition, and won't deny that the policy was in that shape when he sent it to Dr. Davidson.

In reply to that, the plaintiff says that the same facts are apparent on the other policy; that it appears that there was an erasure in that policy, and that therefore there is nothing to be shown by that, and that Dr. Davidson testifies that the policy is in the same shape it was when he received it, particularly as to the date on the back; and further, that on the face of the policy, the term for which it is to run is written out in words as well as the dates given when it begins and when it expires, so that the three years written in words would indicate that if there was a change made in the figures it was done to conform to the period covered by the policy, and not done by any one in an effort to deceive or defraud the company by a change in the term for which it was to run. But, beyond that, they say the practice of the agent had been, about the time a policy would expire, to send a policy in renewal without any particular consultation with, or word from the insured party, or application on his part; that he had been insuring Dr. Davidson from 1889 up to this period, and that each year had granted him but a policy for one year on that property, and that the policies were all for the same amount—$1,250—and the premium all the same amount—one and a quarter per cent on the insurance provided for, and that that amounted to $15.63; and that in July, 1891, as his policy which he had had the previous year would expire on the 1st of August, he made out and sent him this policy, intending it to be a policy covering the same property, for the same period—one year—and for the same amount, and for the same premium; that he did so make out this policy, which seems now to be for three years, but that if he did it, it was a mistake on his part in making it for that period; that it was intended simply for one year as a renewal of the old policy, and that he didn't know any better—knew nothing to the contrary until after this loss occurred and it was presented as one of the papers insuring the property destroyed; that when he sent it, he wrote to him that he had sent it in renewal of the policy that was to expire; that he afterwards met him in his office and was paid the premium—$15.63—and receipted on the back of the policy for it. And he denies that then or at any other time Dr. Davidson ever made any application to him for additional insurance upon that property, and says, on the contrary, nothing was said by him about any additional in-

surance, and that in the following July when he supposed this policy was about to expire as the former policies had done in a period of one year, he made out and sent him this very policy as a renewal for this three year policy, to run from August, 1892, to August, 1893; that the amount of the premium paid him was but the one year amount, and that Dr. Davidson, they argue, did know that it was intended but as a policy for one year; that he only paid the same amount of premium on it that he had paid before for policies running one year and covering the same amount of insurance, and that he received it in accordance with the custom between them in regard to the insurance upon that property. At the time these premiums were paid, it seems that both of these policies were together in Dr. Davidson's office and there before them, and neither of them seems to have said anything, or had their attention called to the fact that on the back of it, it was marked to expire in 1894 instead of 1892.

Now, upon this testimony, the defendant asks you to find that that policy was really but for one year; that it was done that way in accordance with instructions between Dr. Davidson and the insurance agent through whom he did business; that that has been their custom since 1889, that he received it that way and paid the premium demanded for but one year on that amount of insurance on that property, and that he noticed the dates on it and never said anything about it and never made any request to the company for any additional insurance, and accepted the subsequent policy for the period of one year as a renewal of that policy, and that, therefore, he has no right to claim here before you that that policy covered a longer period of insurance than one year, and, therefore, had expired at the time of the loss, and he is not entitled to recover any of the insurance represented thereby in this action. Now that is a fact that you will have to determine from the testimony. [If the jury find that that is a mistake there, that there had been—and it is not denied by Mr. Davidson—no application for insurance for any longer period than the one year which he had been receiving—that this was a mistake upon the part of the agent of the company, known as such upon the part of Dr. Davidson, or that as an ordinarily careful, prudent business man he should have known it from the circumstances attending the business

dealings he had had with this party—the custom in regard to the renewal of the insurance, the amount of the insurance, the amount of premium he had paid covering this policy, and all that, and he accepted it without saying a word to them, noticing that it covered a period of three years, he would not be entitled to recover on this policy. Because, if he noticed that that was a mistake, it was his duty to advise the company of that fact and have it changed, either by changing it to one year for which it was intended, or by paying for the full term of three years, whatever the premium for that period would be.] [8] [On the other hand, if it was actually a mistake on the part of the agent, and Dr. Davidson didn't know it was a mistake and accepted it in good faith as a policy for three years, and paid the premium demanded of him, and should not, as an ordinarily careful, prudent business man have known better in regard to it, and would suffer loss in consequence of the seeking to have additional insurance placed on his property, and getting, as he claimed here, that policy for one year in addition, and the loss occurred without any neglect on his part, why he would be entitled to recover. That is, where it is the mistake of the company and not of the party, the company will have to stand the loss. If it is a mistake, and Dr. Davidson knew that, why he has no right to claim here at all. Or, if it was a mistake and he didn't know about it, but should have known about it as an ordinarily prudent and careful man, he has no right to recover. But, if it was a mistake and he didn't know it and should not have known it, he wouldn't be bound by it, but the party who made the mistake in the first instance, the party who is the culpable one of the two, would have to bear the brunt of it, and that is the company.] [9]

Defendant's points with the answers were as follows:

1. The defendant requests the court to charge the jury that under all the evidence the plaintiff is not entitled to recover. *Answer :* Refused. [1]

2. If the jury find from the testimony that the premium of $15.63 paid by the plaintiff to the defendant company for policy 1852295, only covered one year from the date thereof, there can be no recovery on said policy. *Answer :* Refused. [2]

3. If the jury find from the testimony that the plaintiff knew, or should by proper care have known, that the policy

No. 1852295 was intended to cover but one year, then there can be no recovery on said policy. *Answer:* If the jury find from all the evidence in the case that the plaintiff knew, or as an ordinarily careful and prudent business man should have known, that the term specified in said policy was a mistake, and that it was intended for but the term of one year, and that he was not misled by the term mentioned in said policy to his injury without any fault on his part, then there can be no recovery on said policy. [3]

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Errors assigned* were (1–3, 5–9) above instructions, quoting them.

*Edward Campbell*, with him *Boyd & Umbel*, for appellant.— This policy is presumed to have been issued clear of all blemishes, and the rule is the same as if it were a negotiable note, viz : that the burden of showing that it was defective when issued, is upon the holder : Heffner v. Wenrich, 32 Pa. 423 ; Simpson v. Stackhouse, 9 Pa. 186 ; Nagle's Est., 134 Pa. 31 ; Lilly v. Person, 32 Atl. Rep. 23 ; 1 Green. on Ev. sec. 564 ; Jordan v. Stewart, 23 Pa. 244.

The plaintiff altogether disregarded the terms of his policy, and therefore had no right to maintain this action : Beatty v. Ins. Co., 66 Pa. 9 ; Carey v. Allemania Ins. Co., 33 Atl. Rep. 185.

The plaintiff's position, sustained by the court below, that proofs of loss are not necessary in case of a total loss, is not tenable. The court below sustained the claim on the authority of the Insurance Company v. Dougherty, 102 Pa. 568 ; Stauffer v. The Ins. Co., 150 Pa. 531 ; Roe v. Ins. Co., 149 Pa. 94, and some other similar cases. The Insurance Company v. Dougherty, supra, was on a " valued " policy, where the rule is, that in case of total loss, generally, proofs of loss are not necessary. This rule however could not apply to a case of an " open " policy like the present, nor to any such case as this where the proof for special reasons, after ineffectual efforts to settle amicably, had not been waived, but had been expressly demanded by the company : Wilson v. Mutual Fire Ins. Co., 34 Atl. Rep. 122.

*M. M. Cochran,* with him *Howell & Reppert,* for appellee.—
The jury have found that Davidson knew nothing about the
alleged mistake, until after the loss; the company is bound by
the policy and the acts of its agent, blundering though they be :
Dowling v. Merchants Ins. Co., 168 Pa. 234; Smith v. F. & M.
Mut. Fire Ins. Co., 89 Pa. 287 ; Eilenberger v. Protective Ins.
Co., 89 Pa. 464; Susquehanna Ins. Co. v. Cusick, 109 Pa. 157 ;
Kister v. Lebanon Ins. Co., 128 Pa. 553 ; Myers v. Ins. Co., 156
Pa. 420.

There was a waiver of proof of loss: Penna. Ins. Co. v. Dough-
erty, 102 Pa. 568; Inland Ins. Co. v. Stauffer, 33 Pa. 397 ; Ly-
coming Ins. Co. v. Shollenberger, 44 Pa. 259 ; B. F. Ins. Co. v.
Flynn & Hamm, 98 Pa. 627 ; Ins. Co. v. Erb, 112 Pa. 149 ; Roe
v. Ins. Co., 149 Pa. 94 ; Ins. Co. v. Moyer, 97 Pa. 441 ; Ins.
Co. v. Hocking, 115 Pa. 404; Stauffer v. Ins. Co., 150 Pa. 531.

OPINION BY MR. JUSTICE FELL, July 15, 1896 :

The plaintiff held two policies of insurance issued by the de-
fendant company and covering the same risk. It was admitted
that one of the policies was in force when the fire occurred. It
was claimed at the trial that the other policy, although written
for three years, was intended to be for one year only. The fire
occurred March 28, 1893. The policy in question was for the
three years beginning August 1, 1891, and ending August 1,
1894. The words " for the term of three years " were written
in the body of the policy by the agent of the company. The
numeral 4 in the date 1894 was written over an erasure. It
was not alleged that this had been done by the plaintiff. The
ground of defense was that when the plaintiff received the policy
he had, or should have had, knowledge of the mistake made by
the agent or his clerk, and that with a design to take advantage
of the mistake he had retained the policy instead of offering to
return it or to pay the additional premium for the full term;
in brief, that it was not a contract for three years, and that the
plaintiff had not been misled by the agent's mistake to his
injury.

It was incumbent upon the plaintiff to remove the suspicion
which attached to the policy by reason of the apparent altera-
tion. This was done. Before it was admitted in evidence he
testified that it was then in the same condition that it was in

when received by him, and that he had accepted it and relied upon it as a policy running for three years. The issues raised by the testimony were submitted to the jury with great care and with entire fairness to both parties.

There was ample evidence both of an express waiver of proofs of loss and of facts from which an implied waiver could arise. On the day of the fire the plaintiff wrote to the agent through whom he obtained the insurance, and five days afterward to the general manager of the insurance company, informing them of the loss. On the day after the fire the agent visited the premises, and after examining the policies arranged a meeting between the adjuster of the company and the plaintiff. The adjuster, after ascertaining that the loss was total and in excess of the amount of the insurance, assured the plaintiff that he had done everything that was necessary and that the loss would be paid, and agreed to prepare and send to the plaintiff the proofs of loss ready for his signature. At the end of two weeks, not having received the proofs, the plaintiff wrote to the agent calling his attention to the agreement and asking if there was anything which he should do. The agent replied by letter, denying the liability of the company on one of the policies, admitting it as to the other, and requesting the plaintiff to correspond with the New York office. The plaintiff then wrote to the manager of the New York office stating that he had been advised to do so by Mr. Henry, the adjuster, and asking that he be addressed in regard to the matter. To this the manager replied that he assumed that the correspondence referred to the policy for one year, and " on that assumption we beg to refer you to the printed terms and conditions of said policy, which give full instructions as to the mode of proceeding in the event of loss." The plaintiff at once replied, saying that the letter he had received was very unsatisfactory, that his claim was on both policies, and asking for a more specific statement of the position of the company as to the responsibility for the mistake in writing the policy. With this the correspondence ended.

The authority of the agent in Pennsylvania, and of the adjuster, to do all that they assumed to do is undenied. There was a distinct and specific agreement in relation to the proofs of loss which relieved the plaintiff from any duty in relation to them until they were presented for his signature. This agreement

was made at a time when the adjuster knew of the dispute as to one·of the policies. The assent of the company to the agree·ment was never withdrawn. The liability of the company on one of the policies was at all times admitted, and the denial of liability upon the other was based upon specific grounds. "The trend of our decisions has been to hold insurance companies to good faith and frankness in not concealing the grounds of defense and thus misleading the insured to his disadvantage. They may remain silent except when it is their duty to speak, and the failure to do so would operate as an estoppel; but having specified a ground of defense very slight evidence has been held sufficient to establish a waiver as to other grounds." Freedman v. Fire Ass'n, 168 Pa. 254.

The judgment is affirmed.