## Ambrozavage v. Michigan Fire and Marine Insurance Co.

*Insurance — Fire insurance — Proof of loss—Authority of local agent— Waiver.*

1. While an insurance company may waive a provision in a policy requiring formal proofs of loss within sixty days, such provision cannot be waived by a local agent without express authority to make such waiver.

2. The fact that the insured gives to the local agent an unsigned inventory of the things claimed to have been lost, with their prices, is not sufficient to establish a waiver on the part of the company, if it appears that the insured furnished to the company a formal proof of loss more than sixty days after the fire.

3. By filing a formal proof of loss after sixty days, the insured did not avail himself of an alleged waiver of formal proof. Hence, the question of the waiver by the company of formal proofs did not arise.

Motion to strike off non-suit. C. P. Schuylkill Co., Sept. T., 1920, No. 110.

*R. A. Freiler,* for plaintiff; *John F. Whalen* and *Geo. Ellis,* for defendant.

Koch, J., Jan. 2, 1922.—The defendant resided in the Borough of New Philadelphia, and took out a policy of insurance in the defendant company for $600 to cover his household goods and furniture. Later, he obtained from the company's local agent a removal permit and moved to Port Carbon, where his insured property was destroyed by a fire which occurred in the forenoon on Aug. 2, 1919. He claims that everything was either burnt or spoiled—he could use none of the goods. Between 3 and 4 o'clock in the afternoon of the same day he went to Mrs. Helen Bendrick, the company's local agent who had issued the policy to him, and told her of the fire and of his loss, and she told him she would write a letter to the company. The fire occurred on a Saturday, and Mrs. Bendrick notified the company of the fire by a telegram to the general agent on the following Monday, to which she received a reply, inquiring why she had not notified the company about the removal permit. Mrs. Bendrick had been to see where the fire was on the Monday following the fire, but Ambrozavage was not then at home, so he went to see her a few days later. About two weeks after the fire, Mrs. Bendrick, in the presence of the insured and with his aid, made a list of the articles destroyed, totaling in value $647 and some cents, he stating to her the cost value of each item. The company's adjuster, a Mr. Williams, came about the third week after the fire had occurred, went to New Philadelphia and saw Mrs. Bendrick and then went to the scene of the fire. Mrs. Bendrick did not see Mr. Williams after he went to Ambrozavage's house, but in her first telegram she notified the company that the loss was $450. The company did not tell her to get a statement of the loss; she went of her own accord and got it, so she would have it ready when they would come again. She thought she was acting for both parties in that and did not act for any one specially. She made two copies of her original statement, or inventory and values placed thereon from information which she received from the plaintiff as to cost, but she did not keep the original; it was just a "sketch" made "on shop paper." She made the two

1 D. & C.

copies for the plaintiff, and the company was to come and get one when they would call again, but the agent did not return. The statement had not been ready when the adjuster came; it was not made up until after he left. When she looked at the premises on the next Monday after the fire had occurred, she telegraphed to the company her own opinion of the plaintiff's loss as $450. A. M. Waldron was the name of the general agent of the company, and he acknowledged that he had received Mrs. Bendrick's telegram. When Williams went to Ambrozavage's house, Ambrozavage was not home, but somebody was pointed out to Williams as Ambrozavage's wife. Williams examined the premises, but he could not talk with the woman on account of her foreign language. He did not return afterwards, nor send any one, nor did he demand further proof of loss at any time; but the plaintiff filed a so-called proof of loss in January, 1920, more than sixty days after the fire. Williams had visited the scene of the conflagration and had been afforded every opportunity to make any examination he wished. He does not think that he told Mrs. Ambrozavage she need not call her husband, but she testified that she told him to wait until her husband came home, and that Williams asked her whether she had a paper with everything written on, and that she did not understand what paper he was talking of, but he would not wait until her husband came home. When Williams went there to make an examination of the premises, he found fire had been in two places, one in the kitchen behind the door and one in the closet under the stairs, going upstairs. The house was not destroyed and neither of the fires could communicate with the other. He made a list of the things that were in the house on the day when he was there. The fire had been very slight in both cases, and the house was in practically the same condition as on the day of the fire, according to his idea. He did not want to see the husband; he went only to investigate the fire, and testified "it was a made fire." The company knew nothing about the origin of the fire until he reported it. He suspected it was incendiarism, and made a report of everything he found to the company. Mr. Wilson, of the fire department of Port Carbon, was with him when he made the investigation, and the State Fire Department was also investigating this fire.

The insurance policy, *inter alia*, provides: "The insured shall give immediate notice in writing to this company of any loss or damage, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, stating the quantity and the cost of each article and the amount claimed thereon; and the insured shall, within sixty days after the fire, unless such time is extended in writing by this company, render to this company proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item and the amount and loss or damage thereto," etc.

On cross-examination, the plaintiff admitted that he did not protect the property from further damage, nor separate the damaged and undamaged personal property, nor put it in the best possible order. From his testimony the inference is warranted that he did not concern himself at all about any of the property after the fire, and that he concerned himself only about the insurance money. Notwithstanding the fact that the policy required him to give to the company immediate notice in writing of his loss, he was not compelled to comply strictly therewith, because, by virtue of the provisions of an Act approved June 27, 1883, P. L. 165, one shall be deemed to have complied

with such condition if he has furnished the company at its general office, or the company's agent who countersigned the policy of insurance, with notice of loss within ten days from the date of the fire and a preliminary proof of loss within twenty days of the said date. The plaintiff is a foreigner, who is unable to fluently speak, or clearly understand, the English language, but Mrs. Bendrick speaks both his and the English language fluently. The policy further provides that: "No one shall have power to waive any provision or condition of this policy, excepting such as by the terms of this policy may be the subject of agreement added thereto; nor shall such provision or condition be held to be waived unless such waiver shall be in writing added thereto; nor shall any provisions or condition of this policy, or any forfeiture, be held to be waived by any requirement, act or proceeding, on the part of this company, relating to the appraisal, or to any examination herein provided for."

Now, is the plaintiff, in view of his own conduct, followed by the conduct of the company's local agent and its adjuster, relieved from strict compliance with the letter of the policy, and is it, under all the circumstances in the case, for a jury to say whether or not the company waived any of the conditions requiring a formal written notice of loss, signed and sworn to by the plaintiff? Inasmuch as he gave almost immediate verbal notice of the fire to the local agent on the very day of the fire and she telegraphed to the company two days afterwards, and the receipt of her telegram was acknowledged, the company had written notice of the fire in the language of Mrs. Bendrick's telegram: Beatty v. Lycoming County Mutual Ins. Co., 66 Pa. 9, 16.

When the plaintiff later gave to Mrs. Bendrick a verbal statement, setting forth the particular things destroyed, with their cost value, and she wrote them down on a piece of "shop paper," which she kept until it became destroyed or lost, of which she had given the plaintiff two copies, one for himself and the other to be delivered to the adjuster upon his arrival, he did not strictly comply with the terms of the policy requiring him to furnish a signed statement, sworn to by him. No statement or proof of loss got into the hands of the adjuster, or to the company, until more than sixty days after the fire, when the plaintiff furnished such a paper conformably to the requirements of the policy.

The Act of 1883 settles the question of an agent's authority respecting notice and proof of loss, and makes such notice and proofs as effective when given to the local agent who countersigned the policy as if given directly to the company itself: Welsh v. London Assurance Corp., 151 Pa. 607, 611; Bush v. Hartford Fire Ins. Co., 222 Pa. 419. An insurance company may waive any condition in its policy by parol, although it contains a stipulation that there shall be no waiver except by an express agreement in the policy. Even a condition of non-waiver may itself be waived: Bush v. Hartford Fire Ins. Co., 222 Pa. 419, 432, 433. And "if the insured in good faith, and within the stipulated time, does what he plainly intends as a compliance with the requirement of his policy, good faith equally requires that the company shall promptly notify him of their objections, so as to give him the opportunity to obviate them; and mere silence may so mislead him, to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel:" Gould v. Insurance Co., 134 Pa. 570, 588. If the proofs of loss be informal, the circumstances under which they are delivered may put upon the insurance company the duty of notifying the insured of its objections thereto, if the want of form is to be relied upon: Welsh v. London Assurance Corp., 151 Pa. 607, 616. "Silence on the part of the insurer for any considerable time after the receipt of such proofs of loss will be taken to be a

waiver of the necessity for any further proof of loss, and such proofs, furnished by the insured, will be held to be a compliance with the conditions of the policy:" Bush v. Hartford Fire Ins. Co., 222 Pa. 419, 433; Wakely v. Sun Insurance Office, 246 Pa. 268, 272.

However, the covenants in a policy are mutual and compliance with them is imposed on the insured just as solemnly as it is imposed upon the insurer, and no agent of either party may waive any covenant in a policy without authority to make such waiver. It can only be done by a party to the contract or by a duly authorized representative: Hottner v. Fire Ins. Co., 31 Pa. Superior Ct. 461, 463; Kness v. Anchor Fire Ins. Co., 31 Pa. Superior Ct. 521.

Mrs. Bendrick could not waive the plaintiff's duty to give the proofs of loss, according to the agreement in the policy. "If the insured . . . chose to rely on the voluntary promise of the local agent as his warrant for expunging from his contract some of its important provisions, and ignoring the warnings therein given against such attempts to alter or waive the terms of the writing on which his claim is founded, he placed himself in the position described by Agnew, J., in Marland v. Insurance Co., 71 Pa. 393, thus: 'If deceived or lulled into security, it was not by any act of the company, but by trusting to the mere opinion of one who had no authority to bind the company by any such expression:' " Hottner v. Fire Ins. Co., 31 Pa. Superior Ct. 461, 464. See, also, Devaney v. Northwestern Ins. Co., 64 Pa. Superior Ct. 510, 516, and Primo v. Safety Mutual Fire Ins. Co., 72 Pa. Superior Ct. 409. "Mere negotiations between the insured, who has not furnished proof of loss, and the insurance company's adjuster, or mere expectation of a settlement without any change of position of the insured to his detriment, are not sufficient to establish waiver of proof of loss by the company:" Dunn v. Farmers' Fire Ins. Co., 34 Pa. Superior Ct. 245. In the case of Primo v. Safety Mutual Fire Ins. Co., 72 Pa. Superior Ct. 409, the insured was a foreigner, not well acquainted with English and had very little knowledge of business affairs. He suffered a partial loss by fire. He went to the local agent and told him, quoting his own language: "What I lost, the horses and cows and grain, and he wrote down and he said alright, you go home and do nothing until I have answer from the company, and when I have answer from the company, I will let you know." He visited the agent several times, and the agent told him the same thing, and he did not within twenty days furnish proof of loss to the local agent as required by the Act of 1883, nor within sixty days to the company. The conduct of the agent was such as to make him believe that nothing further was required of him until the agent sent word. But the Superior Court said the plaintiff was not entitled to recover.

"Now, to constitute a waiver there should be shown some official act or declaration by the company during the currency of time dispensing with it, something from which the insured might reasonably infer that the underwriters did not mean to insist upon it. As was remarked by the present Chief Justice in Diehl v. Adams County Ins. Co., 58 Pa. 443, 452: 'This never occurs unless intended or where the act relied on ought in equity to estop the party from denying it.' Mere silence is not enough. Upon this question, see, also, Gould v. Insurance Co., 134 Pa. 570:" Lapcevic v. Lebanon Mutual Ins. Co., 40 Pa. Superior Ct. 294, 300. "Waiver is essentially a matter of intention and cannot arise out of acts done in ignorance of material facts:" . . . Freedman v. Fire Association, 168 Pa. 249, 253. If waiver be a matter of intention, such intention must be made to appear either directly or inferentially, and it seems to the writer that it, therefore, becomes a question for a jury when there is sufficient evidence bearing upon the question. As Mrs. Bendrick was

the company's local agent, and was given by the plaintiff, in the manner hereinbefore stated, an inventory of the things claimed by him to have been destroyed, she must be regarded as being served and furnished with such information for and on behalf of the company, and it was her duty to make full report of the same to the company, notwithstanding the informal and insufficient way in which the inventory, or proof of loss, was prepared. If she failed to make such report, the penalty of such failure cannot be visited upon the plaintiff. The company must be regarded as in the same position as though it had received the report from Mrs. Bendrick, and, as already stated, it became the company's duty to specify its objections, if it had any, to the report or proof of loss, such as its not being signed or sworn to, etc., as required by the terms of the policy. "The trend of our opinions has been to hold insurance companies to good faith and frankness in not concealing the ground of defence and thus misleading the insured to his disadvantage. They may remain silent except when it is their duty to speak, and their failure to do so would operate as an estoppel; but, having specified a ground of defence, very slight evidence has been held sufficient to establish a waiver as to other grounds:" Freedman v. Fire Association, 168 Pa. 249, 255.

The company's real defence, as it was apparently disclosed on the trial, was incendiarism, after the adjuster had visited and examined the scene of the fire. The statement of loss made by Mrs. Bendrick is upon two detached sheets of paper, written with ink, without a caption or a signature or anything to indicate what it is intended for. But she knew, or should have known, what it was intended for. It contains about sixty items, and, without more, begins with "1 ladies sweater $4.00," and ends with "1 table, bed-room, $5.00." The sum total which is made up of the footings on the two different sheets containing three columns of items, and which appears on one of the sheets, is $647.85. The company, therefore, knew, or is presumed to have known, what the paper was intended for. The statement may not have been accurate. Judged by a subsequent proof of loss attached to the affidavit of defence, it is not accurate. But inaccuracy is not fatal to a proof of loss, if it be made up by the insured to the best of his knowledge, information and belief. See Beatty v. Lycoming County Mutual Ins. Co., 66 Pa. 9, 17. But the plaintiff apparently did not rely upon the information which he had thus given to Mrs. Bendrick as sufficient, and, therefore, made out a formal proof of loss, which he signed and swore to and sent to the company more than sixty days after the fire; and if our impression of Ulysses Elgin Butter Co. v. Hartford Fire Ins. Co., 20 Pa. Superior Ct. 384, and of what is said of the case in Edelson v. Norwich Union Fire Ins. Co., 59 Pa. Superior Ct. 379, 385, be correct, the voluntary submission of proofs of loss by the plaintiff more than sixty days after the fire takes out of this case "the questions of the plaintiff's being relieved from the duty of furnishing a proof of loss or the waiver on the part of the defendant of the necessity for the furnishing of the same." By filing a formal proof of loss after sixty days, the plaintiff did not avail himself of any alleged waiver of formal proof: Ulysses Elgin Butter Co. v. Hartford Fire Ins. Co., 20 Pa. Superior Ct. 384, 391. And as that proof of loss was not furnished within sixty days from the date of the fire, the plaintiff was not in a position to begin this suit. Proof of loss, in some form, was a condition precedent to the plaintiff's right to bring suit. We, therefore, think the non-suit was properly entered.

And now, Jan. 2, 1922, the motion to strike off the non-suit is overruled, and the prothonotary is directed to enter judgment in favor of the defendant upon payment of the jury fee.            From M. M. Burke, Shenandoah, Pa.